Robert Franz. Mr. Franz, you may proceed. Pleases the Court, Robert Franz for Crook County. The first finding we'd like you to make is that the District Court should have granted our motion for directed verdict on the fact that what the Planning Commission did was not a taking. What the Planning Commission did was? It was not a taking. In other words, if we look at it from state inverse condemnation law, all the Planning Commission did was say, listen, let's wait. We deny your application. Let's wait until the Circuit Court makes a decision on the access. Are you saying it's a finality issue? Or are you saying that because there was further decisions that could have been made in the Circuit Court, it wasn't a final decision? I guess I'm not understanding why. Yeah, I'm not even going to the ripeness yet. I'm not even going to eat either prong of the ripeness. What I'm saying is that we could call it, if we were talking federal law, we'd say it's a moratorium. In other words, if you make a decision and you just say, listen, we're just going to wait for the other forum that has this issue to make the decision, waiting is not a taking. So do you mean that because they would follow the law, if the Circuit Court told them that they had to give access or it was a road, because they would follow the law, that made their decision not a taking or not a final decision? Well, the decision by the Circuit Court had not yet been made. But the Circuit Court either would have affirmed their decision or would have said, no, you have to call it a road. And so, of course, I presume the county would follow the Circuit Court's ruling. So how does that make their decision not a final decision? Well, if we're going to talk ripeness, we have the factual situation is Mr. Maloney files a declaratory judgment action in the Crook County Circuit Court. He wants the Circuit Court judge to rule that these are public roads. While that action is pending, he files his application to build a resident on Lot 81. So at the time of the Planning Commission's hearing in September 2003, there's a Circuit Court proceeding that's going to declare whether or not that road's a public road. But the Circuit Court proceeding didn't stop him from using his property or selling the property. The Planning Commission decision did. Well, the Planning Commission said no. I mean, there are independent branches of government. And the persons who were saying you can't develop your land was not the state court. That could have taken many years. It could have been a bleak house proceeding. It could have gone up and down and all over the place. In the meantime, what was preventing him from using his land, but not the land just south of him or probably just north of his, was the Planning Commission. And they were the ones who were saying your property has no value. And they were making the decision saying that issue is in front of the Circuit Court. If we rule one way or the other, we're going to take somebody's property. If we rule there is access, we're going to take the property owner's property. If we rule there's no access, then this is going to be delayed. But if for whatever reason that Circuit Court decision went away, I mean, we're not going to deal with that or we're going to put it on the back burner. In the meantime, Mr. Maloney couldn't use his land because of the Planning Commission. And he would come back and reapply. Oh, so he would reapply and then be told the same thing without the possibility of it being overturned by the court. We don't know what he would have said if the Circuit Court didn't head drop. Why don't you move on to the finality issue? And one question I had about that was whether the county court, which isn't really a court, it's a legislative, quasi-legislative, adjudicative body, whether it's more like LUBA that was described by the state court in West Linn, so it's more of would be acting as an adjudicative role, or whether it's more of a legislative body and was actually making policy on that issue for purposes of whether the Planning Commission was the last stop under West Linn. Well, yeah, our position is that the Planning Commission is not the last stop under West Linn, that it would be the Cook County. Now, why isn't that like LUBA, which West Linn said you don't have to appeal to LUBA? You have a final rule from the Planning Commission in that case. Why isn't it like just a review board? The West Linn case said the hearings officer decision was not a final decision. You had to appeal to the city council for the city of West Linn. That's what was not exhausted because the city council for the city of West Linn is the governing body. Likewise, the Cook County court, the three commissioners of the Cook County court, is the final body. That is the governing body that can condemn property. So in this case, they had to appeal the Planning Commission's decision to the Cook County court. That was a de novo review. And that would have been a legislative type decision rather than a judicial review, or what sort of decision did they make? Well, it's a de novo review on the record, and you can add to the record. Right, but is it a policymaking decision? In other words, the Williamson County and West Linn, as I read them say, if the appeal, you don't have to exhaust, you just have to get the final decision from the county entity. And so is the county entity the Planning Commission, or is it the county court? Is the county court just applying legal rules, or is the county court actually making a policy decision? It would be quasi-judicial hearing. Okay, so it would be a judicial hearing. Then why isn't that just exhaustion of judicial remedies, which West Linn and Williamson County said you don't have to do in order to get a final decision? Well, it has to be a final decision from the governing body. The Cook County Court would have made the decision what to do with this particular application. Just like in West Linn, you had to go to the city council. What the state court said is once you get that final decision from the top decision maker within the county structure, we're not going to make you go to the state agency of LUBA. Okay, so that would have been a further level of review in this case. In other words, after the county court had spoken, would there be an appeal to LUBA in this case? They could have appealed to LUBA. They could have. But there would be no requirement to do so. Okay, so the district court says, well, or the jury, that there was a finding of fact on futility that it would have been futile to go to the county court, I guess because of what Judge Cooper had said. So if that's a factual finding, which under Oregon law, as I understand it, that sort of futility determination is a fact finding, what would make that, what would enable us to say that was either clearly erroneous or not supported by sufficient evidence? A futility issue did not go to the jury. The court struck my ripeness and exhaustion requirements pretrial, so there was no issue of ripeness or exhaustion at trial. So the district court made a finding of futility. Is that correct? No, there is no finding. The issue was never to the jury. Well, the district court made a judgment. He just denied our summary judgment, then denied our motion for directed verdict. But prior to trial, he struck my affirmative defenses of ripeness and exhaustion. So that was never submitted to the jury. Thus, the issue of futility was never submitted to the jury. Fertility was argued at the time of motions for summary judgment. So the district court, in I guess denying your motion, determined that it was futile or made some other finding with respect to why it was final. He found that as a matter of law, it was final. And so then that goes back. So those are the ripeness. The points I want to make on the equal protection real quickly is that if you're a planning commission and you have a pending action in circuit court and you make a decision to deny an application and wait for that decision in circuit court, that that's rational as a matter of law. And I'd like to point out that when this case first went to the federal district court, the circuit court proceeding on the declaratory judgment was still pending. So the federal judge put this case on hold until that decision was made in the circuit court. And then once the circuit court decision was made, we went forward with the district court case. I'll also point out that at trial, the attorney, Ms. Coffield, who testified on behalf of the plaintiffs, what she said would have been the correct decision is she said the planning commission should have granted the application with the condition that the plaintiff had to wait until the circuit court made a decision. And as I point out in our brief, if they say the correct decision would have been grant it but make it conditional upon obtaining a favorable rule in the circuit court, how does that differ from denying it until the circuit court makes a decision and then letting the person reapply? So our position is either way, we're going to have to wait until there's the decision by the circuit court. So my point is that it's a rational decision. If a court delays it, if, in fact, if you read my cross-examination of Ms. Coffield, I said, well, wait a second. If the planning commission would have granted the application but conditioned it upon the circuit court decision, you're going to have to wait until the circuit court decision. And her comment was it happens all the time. You've got about five minutes. You want to save a little? I'll save time for rebuttal. Thank you. May it please the Court. My name is Michael Garone. I'm representing the plaintiffs in this appeal. The county's blind reliance on prudential rightful doctrines derived from the U.S. Supreme Court decision in Williamson County is misplaced for several reasons. Williamson County dealt with a property owner's attempt to sue over the denial of its development application before it obtained a final decision as to the permitted uses of the property. In this case, however, plaintiffs purchased lawfully created lots in subdivisions that had been platted and recorded in the public records since the early 1970s. There is no question in this case that plaintiff's property was zoned for residential use and that plaintiffs, therefore, had a vested right to develop that property in accordance with the existing zoning code. Williamson County's rationale of ripeness thus does not fit with the facts of this case, which deals not with a regulatory taking regarding permitted uses of property, but with a denial of access to the property, which is more in the nature of a physical taking. But even if this Court was to conclude. Well, it's not a physical taking. Well, Your Honor, it's not an ouster or a possession of the property, but they were basically saying we couldn't access the property, which in our opinion is more akin to a physical taking than a regulatory taking, which deals with permitted uses. When you say you couldn't access the property, you mean your client couldn't get onto that piece of land? Correct. There was no access because the county was denying the existence of Quail Canyon Road. There was no public access to it. There was no public access to those lots. It doesn't mean there was no access. It's not like they put up a barrier. Well, that's true. They did not put up an obstruction, but there was no. . . That would be a physical obstruction, but trying to analogize what is. . . I mean, this is a regulation. What is going on here is a regulation that may or may not have the effect of a taking. Trying to treat it as a physical invasion is a little far afield. Well, Your Honor, I guess the point I was trying to make is it doesn't really fit neatly within the facts of the many cases that are cited in the county's brief, which deal really with permissible uses. Here we have an access issue, but I would. . . The largely federal cases, does Williamson apply to state takings lining? Well, Your Honor, the Westland Corporate Park case has application here because we're dealing with a state law claim. Westland Corporate Park, I think, is derived from the principles that are set forth by the U.S. Supreme Court in Williamson County. So I've kind of merged them a little bit, but they really stand for a very similar proposition. So why didn't you have to go to the county court if that. . . In other words, the planning commission isn't the last word for the county. The county court is the last word. And although the argument was made of futility to go there, it was based on only the statement of one of the three commissioners, Judge Cooper, I think. There were two other commissioners, so he was a minority, and we don't know what their position was. Well, Your Honor, I have two responses to that. Number one, it's our primary position that the planning commission decision was a final decision within the meaning of Westland Corporate Park. And your question, Judge Ikuda, about this being like the LUBA appeal is correct. This appeal to the county court is exactly like the LUBA appeal. And I take issue with the county's argument that this is a de novo appeal. The appeal was, except in very unusual circumstances, confined to the record before the planning commission. The burden of proof was on the appellant to show that the decision was legally or factually incorrect. And importantly, that burden, quote, is not met merely by showing that the appellant body might decide the issue differently. And to the extent you're saying that the county court is like the LUBA, what are you relying on? Is there a case? Is there a regulation? Is there a statute? I'm citing the Crick County Code, which basically that was in existence at the time, that tells us what the scope of the review. It was not de novo. Counsel misstates that. The planning commission holds a de novo hearing from the department's decision, the administrative decision of the planning department. But the county court, in essence, is a reviewing body. It's not making legislative policymaking choices, which is what the Supreme Court of Oregon and Westland Corporate Park held was required to be not exhausted, but to be utilized before you go to court. Here it was essentially the same type of standard as would be applicable in LUBA. So our number one argument is that it is a final decision within the meaning of both Westland Corporate Park and Williamson County. I don't think you answered Judge Ikuda's question. We have the Crook County Court, which is quasi-judicial, and it has three members. Let's take as admitted that the head of the court had expressed his opinion that Quail County Road did not provide legal access and, further, that he would defer his decision to the planning commission. So that's one vote that you lost. But why couldn't you appeal to the Crook County Court to get the other two votes? Well, Your Honor, first, I'm not sure that the Crook County Court is a quasi-judicial body. It's acting as a legislative body, and it has the right to make policy decisions on legislative matters. But in this particular case, by the Crook County Code's own terms, it was basically going to review the planning commission's decision. The planning commission was the body delegated in a quasi-judicial capacity with the authority to make land-use decisions. And, again, that's right out of their code. But in terms of futility ---- So you're saying that an appeal to the Crook County Court would have been futile because the Crook County Court did not have the power to overrule the planning commission? They had the power to overrule the planning commission if there was legal error or factual error. They could not second-guess in a policymaking, discretionary manner the decision. It was not going to be a political decision. It was going to be, in essence, an appellate decision. So they could make the determination that, as a matter of law, Quail Canyon Road had not been dedicated? They could have made the decision that there was legal error. Which was the basis for not allowing your client to go on his property. But, Your Honor, I think that dovetails into the futility argument. If I may, I would submit that there's way more showing futility here than just that one letter from Judge Cooper. And if I might ---- Could I just, before we go to the futility, just to clarify, I thought your argument was that under West Linn, your client was not required to seek the county court review because that was exhaustion of remedies. You already had a final determination. Am I understanding that right? That's absolutely correct. Okay, so only if we would decide that, in fact, to get a final decision, you would have to go to the Crook County Court, then you would have to argue it would have been futile. So now, if you could address the futility. Yes, so futility is our backup argument after our argument that it was a final decision. Well, there's six major facts that I would like to just briefly go over. First ---- Before I get to that, would you be able to go to state courts to get a planning commissioner reviewed without going to county court? Well, Your Honor, my understanding is that the county court would decide the issue, and then it could be appealed to LUBA, and then it could be appealed to the Oregon Court of Appeals, and then it could be appealed to the Oregon Supreme Court. And that's the way the appellate process would go from the county court's decision. And so we would submit that going to the county court is no different than going to LUBA under the facts of this case under the authority that's vested in the planning commission. But as to futility ---- I'm sorry, I didn't understand your answer at all. If you wanted to get review of the planning commission decision in the state courts, there is a mechanism for review in the state courts, right? It's through ---- My understanding is it would be through LUBA and then the court of appeals. Oh, no. Yes. There is a mechanism, right? Yes. Could you go from the planning commission directly to state court? To state court, Your Honor, I mean, I think unless they ---- unless you can maybe file some kind of a mandamus or something like that, but there's no statutory mode of appealing directly to state court from the appealing the planning commission, to my knowledge. So if there isn't for purposes of state law a way of going to state court, how can that be a final decision for purposes of taking claim? If it's not a judicially reviewable decision without going to county court, why isn't that a necessary exhaustion? Your Honor, because Wesleyan Corporate Park and Williamson County don't require exhaustion of remedies in terms of attacking the legitimacy of the decision. All they require is that there be a policy decision made by a municipal or governmental body that has policymaking authority. Here, the body that was vested with that authority is the planning commission. You don't have to go past the planning commission to get a final decision within the meaning of those two cases. And that's why I think Judge Acuda's question about LUBA was accurate in the sense that you don't have to exhaust that Oregon law. You don't have to go to LUBA.  You don't have to go to the Supreme Court. All you have to do is go to the body that has the final policymaking authority. And here, that was the planning commission. But, again, even if you were to disagree with me on that and say, well, you have to go to county court, there was an abundance of facts on futility. Number one, county council had taken the position that the planning department was correct. And Judge Cooper, on April 2nd, 2002, wrote and said he agreed with the planning department's decision, supported the decision. Then county council refused to change the decision. Then Judge Cooper wrote Mr. Maloney and said that the county court defers to the decision of the planning department and the expertise of legal counsel. It was already clear. So it's a three-member commission. Yeah, and that was copied. And they have a county council. Now, in our court, if one judge has a strong opinion about what the law is, that doesn't necessarily mean that will prevail.  So in the county court, if the chief, if the judge, who's the chair, I guess, of the county court, and their lawyer, the county council, agree as to what the law is, does that necessarily mean that the county court will reach that result? Well, Your Honor, it shows that there would be very little likelihood of success, which is the standard for futility. And, Your Honor, that letter where the county judge said the county court defers to the planning department and the expertise of legal counsel was copied to the other two county court members. They didn't protest. Then a few months later, the county council wrote Mr. Maloney's lawyer and said that access will require approval from either the planning commission or the circuit court. So he doesn't say that it would require approval from the county court. He says that there's two ways to get this. You can go to the planning commission or you can go to circuit court and file a lawsuit yourself. And then on September 10th, right before the planning commission hearing, the county judge writes a letter to the planning commission saying that the county council had exercised an appropriate standard of diligence. And also, this is really crucial, this is at SCR 203, the planning commission was the, quote, ultimate decision maker, close quote, in the case. That's what the county judge was telling the parties right before the planning commission hearing, that the ultimate decision maker was the planning commission. Now, the other thing is, ripeness, if you look at ripeness, when the judge hears the case, the judge has to decide from a prudential standpoint whether there's a final enough decision for the judge to be able to review the governmental action. Here, by the time the district court judge got the case, the county had already been in circuit court actively and vigorously opposing Mr. Maloney's application to establish access. So that's another very strong fact showing futility. The county, in this particular case, was attempting in the circuit court proceedings. Now, the county can't spend money on lawyers to defend cases in court unless it's approved and authorized. So there was a decision made at the highest levels of the county that there was no access here. So when the judge saw all this, the judge made a decision that it was ripe. And we would submit that that decision was correct. Did the district court make any specific finding on futility? There's no specific statement on futility, Your Honor. He basically just says that it's ripe. And, again, we think that should be upheld by this court. As to the equal protection arguments raised by Mr. Franz, Mr. Franz or the county has waived a lot of its argument. Any of its arguments based on sufficiency of evidence have been waived because there was no judgment as a matter of law filed after verdict. And we cite the recent Supreme Court case Ortiz v. Jordan from 2011, which just reiterates that if you don't file a post-verdict JMOL motion, you waive any arguments about sufficiency. So this argument that somehow it was rational or irrational for the county to have done what they did is not preserved here. That was for the jury to decide. This is a jury verdict. The jury decided all the factual issues. They decided issues about bias, about rationality, about similarly situated individuals in terms of the equal protection claim. They decided the case. And to the extent that the county has any beefs with the sufficiency of that evidence, whether it be on the equal protection, whether it be on damages, or whether it be on any other factual issue, they have waived those. The only so I think you should reject all those arguments about the equal protection claim. We feel that there was a final decision in this case. If the court concludes that it wasn't final, that there was some other opportunity, the going to the county court would have been a futile act and should have not been required. And so we would urge this court to uphold the jury's verdict in this case. Thank you. Thank you. What about the attorney's fees? You didn't talk about them. Your Honor, we believe that we should have gotten attorney's fees, some attorney's fees for the interim period that the court denied us. And I'll rely on the agreement. The provisions of the Crook County Code for the purposes of an appeal to the Planning Commission. So as you know, the Planning Commission advised Mr. Maloney he could appeal to the Crook County Court. Those provisions provide as follows. The filing of an appeal in accordance with the provision of this section initiates the appeal process and stays the order of the decision appealed. So first of all, as soon as Mr. Maloney would have appealed to the Crook County Court, the decision of the Planning Commission would have been stayed. The process shall include appropriate public notice. What would have been the effect of that? Well, I'm just basically explaining the appeal process in front of the Crook County Court. But if the decision of the Planning Commission had been stayed, would Mr. Maloney have been able to get access to the property or not? If the decision is stayed, it's not enforceable. It's not enforceable. So he could have gone on his property and started developing it. Is that your position? Well, he – yes. He went on his property and was developing it. He put an easement across his property. He had septic in his property. He was not prevented from going on to his property and so on. So he could have started building – he could start putting down foundations and as long as the appeal was going on, he could have built his house there. He could have done whatever he wanted. The second process, the process shall include appropriate public notice. I thought the problem started when he tried to get a permit and they said no permit because there was no public access. So if the Planning Commission's decision is stayed, he still hasn't got a permit. He didn't apply for a permit. He applied for permission to construct a residence on Tax Lot 81. I'm sorry. Permission is different from a permit? No. A site review, approval of a site review. Okay. And you need that in order to lawfully build something on the property. Isn't that how it works? You can't just go on your property and build a skyscraper, right? It has to be within the zoning. You know, if it's zoned for farmland, it has to be a zone. He's going to need site approval. I'm sorry? He's going to need site. He is. Okay. So if you stay the Planning Commission's decision, does that give him site approval? No. So he can't build when you say he can go ahead and do anything he wants? So that's not going to – Okay. A little bit broad statement. He can still go on his property. He can still – Well, it's more than broad. It's wrong. Well, he can't – he cannot build without a site approval. What he's trying to do is build, right? Correct. He's trying to get approval to build. He's trying to get permission to build. Exactly. The Planning Commission says no. Okay. And Judge Beyer asks you what is the effect of getting a stay of that decision, and you said he can do anything at all. But that was a misstatement. I'm not – Okay. I'm not calling you a liar. I'm just trying to make sure that we are accurate here. The answer to Judge Beyer's question is he would still have not been able to build, staying the commission's decision would not have changed the status quo, which is that he didn't have a permit, and therefore, it was unlawful for him to build on the property. He could not build, but he still had an easement across the property for the neighbor. He could go have a picnic there. He still could do that. But that's true, but largely irrelevant. He could do that. He didn't need a permit to have a picnic there. Correct. So the whole reason he went to the planning commission, which is to allow him to do something he couldn't do before, that couldn't happen, right, because of the planning commission's decision to stay. Yeah. The site, the proceeding would have been stayed. He still needed site approval to build. He would be in no different position at that point than if he had never gone to the planning commission. He could still do all those things on the property that he could have done if he'd never opposed the planning commission. Correct. So the effect of staying the planning commission's decision is absolutely zero. Well, I don't know if it's absolutely zero. Well, tell me what staying the planning commission means. It means that the planning commission cannot enforce the order. Perhaps staying isn't even a proper – a stay would do of no effect. Tell me one thing that staying the commission would make possible that wasn't possible if there weren't a stay. Just one thing. The application would not have been denied. No, no. One thing possible in the real world. What is it he could have done with his property on staying the planning commission's decision that he couldn't do without staying it? No difference. Okay. So when you get up and you say, oh, he could have gotten a stay, you really sort of wasted five minutes of your time telling us absolutely nothing at all, right? I'm down. I have wasted four minutes. Yeah. Okay. Okay. So let me quickly finish. I think your time is up at this point. May I finish the process showing where it's de novo? You better say something really useful right now. Well, okay. I'm just saying here's what the appeal process says. All hearings of appeal from an administrative decision shall be de novo. The appellate body, the Cook County Court, may at its option admit additional testimony and any other evidence. Reading stuff from the record is not going to help you at this point. I think we've heard enough. All right. Thank you. Thank you. The case is argued. We'll stand serenity.
judges: Kozinski, Bea, Ikuta